David Whiton et al., Respondents, *v.* Frederick Spring, Appellant.

Plaintiffs were part owners of a brig ; one C. was also part owner, was in possession, managing her business, and was ship's husband. The owners authorized C. to sell the brig through defendant as broker ; they executed and delivered to C. a bill of sale, with the name of the purchaser in blank, to be, and which was, delivered to defendant, who made a valid contract for a sale to A. & Co. In anticipation of the completion of the sale, defendant in good faith, but with knowledge of plaintiffs'

interests, paid two drafts drawn upon him by C., with intent that they should apply on and be deducted from the purchase-price when received; this was subsequently paid by A. & Co. C., soon after he obtained the money on the drafts absconded, without accounting to plaintiffs. In an action to recover plaintiffs' share of the purchase-money, *held,* that C., as part owner or as ship's husband, had no authority to sell plaintiffs' interests; that while C. as plaintiffs' agent to sell had authority to receive the purchase-money when paid, he had no authority to anticipate the payment or to receive money on the security of the brig, and defendant had no right to make such advances to C. upon the credit of the owners or the brig; that the payment to C. was in law a loan to him, for which plaintiffs were not liable, and that they were entitled to recover.

The complaint alleged the facts of the joint ownership of the brig, the employment of defendant, the sale, and that defendant had settled with the other owners, but had declined to account with or pay the plaintiffs for their share of the purchase-money, deducting commissions, etc. The relief asked was for an accounting and payment of the amount found due or for further relief. The case was moved for trial by plaintiffs as an equity cause; defendant claimed a jury trial, which was denied. *Held,* no error; that the matter was one of equitable cognizance.

P. C., one of the plaintiffs, in fact owned one-eighth of the brig, although the registry of the vessel and the bill of sale to conform thereto showed that he owned but one-thirty-second part. *Held,* that it was competent for P. C. to prove by parol the facts as to the ownership; and that it was not error to allow him to recover for his actual interest.

It appeared that defendant paid, at the request of C., on account of the brig, after she was placed in his possession for sale, sundry items for wharfage, towing, insurance, etc., and for expenses of sale, which the court refused to allow to him. *Held,* error.

At the time of making the contract of sale, A. & Co., the purchasers, paid down to defendant $500. Subsequently A. & Co. declined to complete the sale, because of alleged defect in the title, and defendant paid back to them the $500; but A. & Co. thereafter completed the purchase, paying to defendant the whole purchase-price. *Held,* that defendant had the right to pay over to C. the $500, and it was just to consider that he had paid it over; and that he was entitled to be credited therewith.

(Argued June 10, 1878; decided June 18, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of the plaintiffs, entered upon a decision of the court at Special Term.

This action was brought for an accounting and payment

by defendant to plaintiffs of their proportionate share of the proceeds of the sale of the brig Lubra.

The facts appear sufficiently in the opinion.

*F. N. Bangs*, for appellant. Defendant was entitled to a trial by jury. (*Cochran* v. *Carrington*, 25 Wend., 409; *Dean* v. *Chamberlain*, 6 Duer, 691; *Dykman* v. *Valiente*, 42 N. Y., 549.) Defendant had a right to deal with Child, from his ostensible relation to the brig, as authorized to receive the purchase-money, either in advance or after defendant had collected it. (*Crocker* v. *Crocker*, 31 N. Y., 507; *McNiel* v. *Tenth Nat. Bk.*, 46 id., 325.) In favor of defendant as against plaintiff, actual title to the brig and its proceeds will be conclusively presumed to have been in Child on the ground of estoppel. (*Weaver* v. *Barden*, 46 N. Y., 286; *Holbrook* v. *N. J. Zinc Co.*, 57 id., 624; *Driscoll* v. *W. B. Co.*, 59 id., 101.) Child, as managing owner, factor and ship's husband, in possession, with actual authority to sell, had apparent authority to receive the proceeds. (Edwds. on Factors, §§ 1, 69; Story on Sales, §§ 1, 93; Story on Agency, § 112; 1 Pars. on Con., 98; *Johnston* v. *Ellis*, 11 Ad. & El., 549; *Higgins* v. *Moore*, 34 N. Y., 417.) He had rightful power as a mere agent to sell and to receive the proceeds of sale after an actual contract of purchase had been made. (*Wright* v. *Holbrook*, 24 Wend., 169; *Bailey* v. *R. R. Co.*, 49 N. Y., 74.)

*Joseph H. Choate*, for respondents. The fact that Child was one of the part owners of the brig does not save defendant from his personal liability. (1 Pars. on Ship. & Adm., chap. 4, § 2, pp. 93–100; Pars. on Part., 556.) Defendant was not entitled to a jury trial. (*Dyckman* v. *Valiente*, 42 N. Y., 549.)

Earl, J. In the spring of 1872 the plaintiffs owned one-half of the brig Lubra in the following proportions: Whiton Bros. & Co., one-eighth; Percival, two-eighths, and

Crowell, one-eighth; and the other half was owned two-eighths by one Child, and two-eighths by one Hail. Child had the possession of the brig, was managing her business and was ship's husband. The owners, being desirous to sell her, authorized Child to sell her and to employ the defendant as a broker for that purpose. In order to facilitate the sale, at the request of Child, the plaintiffs and other owners executed and delivered to him to be delivered to the defendant a bill of sale of the brig, leaving the consideration and the name of the vendee therein in blank, in order that, in case a purchaser should be found by the defendant, he would have a bill of sale ready for delivery. Child soon thereafter delivered the blank bill of sale and the possession of the brig to the defendant, and he at once proceeded to advertise her and to find a purchaser for her. The defendant was aware of plaintiffs' interests in the vessel, as they appeared in the bill of sale, and also of the purpose for which the bill of sale was executed and delivered to him. On the seventeenth day of May, the defendant made a valid contract for the sale of the brig to Ahrens & Co., for the sum of $9,500, and received from them $500 of the purchase-price. On the twenty-first day of May, upon the request of Child, the defendant paid to him upon his draft $4,000, and on the twenty-fourth day of May, paid to him upon another draft $3,562.50. These payments were made in anticipation of the purchase-price then about to be received by the defendant and with the intent that they should apply thereon and be deducted therefrom in defendant's account with the owners. After this, Ahrens & Co. objected to the title of the brig and refused to take her and demanded back the $500 which they had paid, and the defendant on the first day of June paid it back. But on the sixth day of June, the defendant made the title satisfactory to Ahrens & Co., and they took the brig up on the same terms previously agreed on, and paid defendant the $9,500 and took possession of the brig. The defendant had no instructions from or dealings directly with the plaintiffs, but dealt exclusively with Child, in good faith

and in the belief that he might lawfully make advances to him thereon and pay over to him the purchase-price thereof.

Soon after Child had drawn the money from the defendant, he absconded and never accounted to the plaintiffs for any of the money so received by him ; and this action is now brought by the plaintiffs to recover of the defendant their share of the purchase-money so paid him.

Child, as part owner of the brig, had no authority to sell plaintiffs' interests in her ; nor did he, as ship's husband, have any authority to sell such interests. (1 Parsons on Shipping and Adm., 93, etc., and 109.) His only authority to make such sale was as plaintiffs' agent. His authority was to make the sale through the defendant as broker. His apparent authority was such that the defendant, after making the sale, could undoubtedly pay over to him the purchase money received. An agent authorized to sell personal property which he has in his possession and can deliver must, in the absence of any known limitation upon his authority, be authorized to receive the purchase-price. · Therefore if the defendant had made the payments after he had effected a sale of the brig and received the purchase-money, he would have been protected against the plaintiffs.

But when he paid these two drafts, he had not made a sale. He had made an agreement to sell and was then trying to perfect the title so that he could deliver the bill of sale and receive the balance of the purchase-money. The only authority Child had in reference to the purchase-money was to receive it after the sale had been effected and the purchase-money paid. He had no authority to anticipate the payment of the purchase-money, and was not plaintiffs' agent for that purpose ; and he had no authority, as such agent, to receive money on the security of the brig. The payments to Child were in law a loan to him ; and in case the defendant had finally failed to make a sale, or had, without fault, failed to receive the purchase-price, he could have compelled the repayment of the money by Child with interest. In such case, he would have had no claim against the

plaintiffs upon the theory that Child received the money as their agent. While Child had authority to receive the purchase-money, he had no authority to borrow the amount of it, or to make the plaintiffs, for one moment, debtors for the amount thereof to the extent of their interest therein. His sole authority was to sell and receive the purchase-money. He had no authority to receive defendant's money advanced to him, either upon the credit of the owners of the brig or of the purchase-money to be thereafter received. Judge STORY, in his work on Agency, § 98, says: "An agent, intrusted to receive payment of a negotiable or other instrument, is ordinarily deemed entitled to receive it only, when and after, it becomes due, and not before it becomes due." In *Panther* v. *Gaitskell* (13 East, 432), Lord ELLENBOROUGH says, that "every person who pays money beforehand pays it at his own risk;" and in the same case, BAYLEY, J., says: "If goods are to be paid for on delivery, and the vendee will pay for them to one who acts as agent on behalf of the vendor, before they can be delivered, he thereby constitutes that person his own agent until the time when the money ought to have been paid to him and must stand to the loss if it be misapplied."

Hence the general merits of this case are with the plaintiffs; and I will now proceed to examine other points made on behalf of the defendant.

The cause was moved for trial at a Special Term as an equity cause, and before any evidence was given, the defendant claimed a jury trial, which was denied. The claim was based upon the pleadings. The complaint alleged the facts of the part ownership of the brig, the employment of the defendant to sell her, the sale, that he had settled with the other owners, but had declined to account with or pay the plaintiffs for their share of the purchase-money to which they were entitled, after deducting commissions and lawful charges; and the relief prayed was for an accounting and judgment for the amount found due and for such other and further relief as might be agreeable to law and equity. It is

quite true that the complaint did not set forth a very well-defined cause of action in equity. But we cannot say that the court erred. All the requisite parties for a full and final accounting were, upon the facts alleged, before the court. It was alleged that Child and Hail, who owned the half of the brig not owned by the plaintiffs, had been settled with by defendant, and hence they were not necessary parties; and the adjustment of the rights and interests of the part owners of a vessel after a sale is usually a matter of equitable cognizance. (*Dyckman* v. *Valiente*, 42 N. Y., 549.)

There was no error in allowing the plaintiff, Crowell, to recover as owner of one-eighth of the brig. It was competent for him to show, as he did, that he owned the one-eighth, in fact, although the registry of the vessel, and the bill of sale to conform thereto, showed that he owned but one-thirty-second part and that the other three-thirty-second parts belonged to other parties. The bill of sale and the registry were not conclusive; and I know of no rule of law that prohibited parol proof of the actual truth as to the ownership. I believe it is the settled law of this country that it may be shown that by a parol agreement or transfer the title to a vessel is actually in one while the ship's documents upon their face show it to be in another. (1 Parsons on Shipping, 47 *et seq.*)

Upon the trial the plaintiffs proved by the defendant that he paid on account of the brig, after she was placed in his possession for sale, sundry items for wharfage, towing, insurance, etc., and for expenses connected with the sale, amounting in all to $632.42. The plaintiffs put in evidence the account current, showing these items of payment. There was no objection on the trial that the payments were not sufficiently proved or that they were not proper charges against the owners. The court at Special Term refused any credit to the defendant on account of these items, on the ground that they were incurred by the defendant, not as broker for the sale of the brig, but as assignee of her freight money; and on the

further ground that they were not embraced within the issue. I can find no evidence that these items were incurred by the defendant as assignee of the freight money, or that they had any connection whatever with or relation to the freight money. The defendant made the payments at the request of Child, after the brig had been placed in his possession for sale. It is true that he received some freight money, but all that he paid over to Child, who, as ship's husband, had the right to collect, and received it or authorize another to do so (1 Parsons on Shipping, 109); and these items could properly be allowed under the pleadings. The plaintiffs in their complaint claimed their share of the proceeds of the sale, after deducting commissions and lawful charges, and demanded an accounting. The defendant claimed that he had paid the entire proceeds over to Child, after deducting commissions and expenses. In taking the account, therefore, the court should have considered these items and allowed the defendant as against the plaintiffs the one-half thereof, to wit, $316.21.

At the time the defendant paid the two drafts of Child he had in his hands, as part of the purchase-price of the brig, $500, and this he had the right to pay to him; and it is just that he should be treated as having paid that sum to him. He had made a valid contract of sale and had received so much. For this he was bound to account to his principals. It matters not that he afterward voluntarily refunded this sum to the purchasers. It does not appear that he was bound to, or that, as between him and the plaintiffs, he had a right to. It is enough that it was in his hands, and that he had the right to pay it to Child. The one-half of this sum he should therefore have been credited and allowed, as against the plaintiffs.

It follows that the judgment must be reversed and a new trial granted, costs to abide event, unless the plaintiffs shall stipulate to reduce the judgment by deducting from the amounts adjudged therein to the plaintiffs ratably the sum of $566.21, with interest from June 6, 1872; and in case

of such stipulation, the judgment must be affirmed for the balance, without costs to either party in this court.

All concur, except FOLGER, J., who was for affirmance in full, without deduction; RAPALLO, J., absent.

Judgment accordingly.